IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| K.G., et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>OWL CITY, et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 17-8118 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

In this action, Plaintiff K.G. and her mother, B.G., (collectively, "Plaintiffs") allege that Defendant Daniel Jorgensen sexually assaulted K.G. when she was 14 years old on a municipal beach near a music concert of the band Owl City in Atlantic City, New Jersey. Plaintiffs also seek to hold Defendants Owl City, Adam Young, Stephen Bursky, Creative Artists Agency, and Foundation Artist Management, LLC (collectively, "the Moving Defendants") vicariously liable for the alleged conduct of Defendant Jorgenson. Pending before the Court is the Moving Defendants' motion to dismiss the Complaint for failure to state a claim as to them pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Item 11.] Notably, the motion is not joined by Defendant Jorgensen, who timely filed an Answer to the Complaint. [Docket Item 14.] The Court held oral argument on November 1, 2018. [Docket Item 26.] For the reasons discussed

below, the Court will grant the Moving Defendants' motion and dismiss the Complaint against them, with prejudice in part and without prejudice in part. The Court finds as follows:

1. **Factual and Procedural Background.**[1] Defendant Owl City is a Christian music band that was founded by Defendant Adam Young, a pop singer, songwriter, and instrumentalist, in Owatonna, Minnesota. (Compl. [Docket Item 1] at ¶¶ 7-8.) In 2012 and 2013, Defendant Daniel Jorgensen, a professional musician who played the vibraphone/guitar, toured with Defendants Owl City and Adam Young around the country. (Id. at ¶ 10.) Defendants Stephen Bursky and Foundation Artist Management, LLC's ("FAM") managed Defendant Owl City and allegedly "were at all times responsible to provide management, supervision, hiring, re-hiring, training, [and] re-training," of Defendant Owl City's band members, including Defendants Adam Young and Daniel Jorgensen. (Id. at ¶¶ 9, 12.) According to the Complaint, Defendant Creative Artists Agency ("CAA") "was and continues to be a professional musical management agency" (id. at ¶ 13), although it is not clear from the face of the Complaint what relationship, if any, CAA maintained with the other Defendants.

2. On or about April 3, 2012, Plaintiff K.G. met Defendant Jorgensen outside the Verizon Center in Washington

---

[1] The facts alleged are drawn from the Complaint [Docket Item 1], which the Court must accept as true for purposes of this motion.

2

D.C. where Owl City had just performed a music concert. (Id. at ¶¶ 10, 17-18.) According to the Complaint, Defendant Jorgensen "and other band members and Owl City crew were congregated [in front of the Owl City tour bus] for purposes of meeting underage girls," and Defendant Jorgensen approached K.G. and obtained her Facebook username. (Id. at ¶ 18.) At the time, Plaintiff K.G. was 13 years old and Defendant Jorgensen was approximately 28 years old. (Id. at ¶¶ 17-18.)

    3. Over the next year, Defendant Jorgensen repeatedly messaged Plaintiff K.G., video chatted with her on several occasions, and eventually "began to ask [K.G.] on a daily basis to send him inappropriate naked pictures of herself and he offered to show her his private parts on his webcam." (Id. at ¶ 19.) In April 2013, Defendant Jorgensen invited Plaintiff K.G. to an Owl City concert in Pittsburgh, Pennsylvania, where he allegedly "arranged to meet with her at the Owl City Tour bus at the venue." (Id. at ¶ 20.) Thereafter, Defendant Jorgensen continued to send messages to K.G., which were sent on Facebook and Skype, by text message, and on video chat, and included the exchange of photographs. (Id.) The Complaint does not allege that any of the Moving Defendants knew about Defendant Jorgensen's conduct with respect to K.G. during this period.

    4. Defendant Jorgensen next invited Plaintiff K.G. to attend an Owl City concert in Atlantic City, New Jersey, which

3

was to take place on August 29, 2013, and to stay with him alone in a hotel room the night of the concert. (Id. at ¶¶ 20, 23.) On the morning of August 29, 2013, Defendant Jorgensen brought Plaintiff K.G. to the beach in Atlantic City and allegedly "sexually assaulted, sexually molested, detained, restrained, fondled, humiliated, defiled, harassed, intimidated, abused and endangered the welfare of K.G.," who was now 14 years old. (Id. at ¶¶ 24, 27.) Defendant Jorgensen then left K.G. on the beach while he left to perform a sound check for the concert. (Id. at ¶ 25.) After the sound check was finished, Defendant Jorgensen stayed with Plaintiff K.G. for the remainder of the day until the concert began. (Id.) According to the Complaint, during the day "[t]he pair were readily visible to [Defendant] Adam Young and other members of the Owl City band and crew." (Id.) The Complaint does not, however, allege that any of the Moving Defendants witnessed or were aware of any alleged misconduct.

5. After the concert ended, Defendant Jorgensen again met with Plaintiff K.G. on the beach, where he spent the rest of the night with her and allegedly "once again sexually assaulted, sexually molested, detained, restrained, fondled, humiliated, defiled, harassed, intimidated, abused, and endangered the welfare of K.G." (Id. at ¶ 26.) He also "attempted to coerce and/or force [K.G.] to go with him to . . . Defendant[s] Owl City and/or Adam Young's Tour bus with him so that he could

4

engage in sexual intercourse with . . . K.G." (Id. at ¶ 27.) According to the Complaint, "Defendant Jorgensen displayed no concern or worry that any of the co-Defendants would question his bringing a 14-year-old onto the Tour bus." (Id.) The Complaint does not allege that Defendant Jorgensen actually brought Plaintiff K.G. onto the tour bus or that any of the Moving Defendants had actual knowledge of Defendant Jorgensen's alleged misconduct involving K.G., but generally states:

> Upon information and belief, [the Moving Defendants] allowed, permitted, condoned, acquiesced, and/or ratified [Defendant Jorgensen] to commit sexual assaults and sexual molestations upon K.G. from August 29, 2013 through August 30, 2013 by encouraging, tolerating, ratifying, and/or condoning a culture within the Defendant, Owl City of sexual deviance with minor fans, including but not limited to meeting young children at the tour bus, inviting minor fans backstage after concerts/performances, to Defendant, Owl City's tour bus, and to hotel rooms.

(Id. at ¶ 30.)

6. In December 2013, Defendant Jorgensen was terminated from his employment with Defendant Owl City. (Id. at ¶ 31.) On April 28, 2015, the Atlantic County Prosecutor's Office charged Defendant Jorgensen with Attempt to Lure or Entice a Child (2nd Degree) and Criminal Sexual Contact (4th degree). (Id. at ¶ 32.) On August 4, 2015, Defendant Jorgensen was indicted by the Atlantic County Grand Jury on those same charges. (Id. at ¶ 33.) Ultimately, Defendant Jorgensen pled guilty to a single count of Lewdness Observed by a Child. (Id. at ¶ 34.)

5

7. On October 11, 2017, this Complaint was filed setting forth the following causes of action as to all Defendants: Assault & Battery (Count One); False Detention & Imprisonment (Count Two); Intentional and Negligent Infliction of Emotional Distress (Count Three); Respondeat Superior (Count Four); Negligent Hiring, Retention, and Supervision (Count Five); Intentional Misconduct and/or Gross Negligence (Count Six); Punitive Damages (Count Seven); and a per quod claim on behalf of Plaintiff K.G's mother, B.G. (Count Eight). [See generally Docket Item 1.] Thereafter, the Moving Defendants filed a motion to dismiss the Complaint as to them pursuant to Fed. R. Civ. P. 12(b)(6), which is currently pending before the Court. [Docket Item 11.] Plaintiffs filed opposition [Docket Item 22], and the Moving Defendants filed a reply brief. [Docket Item 23.] The Court convened oral argument on November 1, 2018 [Docket Item 26] and, at the Court's invitation, the parties subsequently filed supplemental briefs. [Docket Items 27 & 28.] The motion to dismiss is now fully briefed and ripe for disposition.

8. **Standard of Review**. Under Fed. R. Civ. P. 12(b)(6), a party may file a motion to dismiss for failure to state a claim upon which relief can be granted. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. See Erickson v.

Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A motion to dismiss may only be granted if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although the Court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). A plaintiff should plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," Twombly, 550 U.S. at 556, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678.

9. **Discussion**. The instant motion asserts that the allegations in the Complaint must be dismissed against all of the Moving Defendants because Plaintiffs fail to state any plausible claim for relief as to them. Plaintiffs have opposed the motion. For the following reasons, the Court will grant the motion to dismiss in its entirety, with prejudice in part and without prejudice in part.

10. <u>Counts One, Two, and Three</u>. In the Complaint, Plaintiffs allege all Defendants are directly **and** vicariously

liable for Defendant Jorgensen's alleged conduct forming the basis for Counts One, Two, and Three. The Court addresses these Counts with respect to direct and vicarious liability, in turn, as to the Moving Defendants.

11. ***Direct Liability***. Count One alleges that the Moving Defendants are directly liable for the assault and battery allegedly committed by Defendant Jorgensen. (Compl. at ¶ 39.) Under New Jersey law, "[a] person is subject to liability for the common law tort of assault if: (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009) (internal citation omitted). "The tort of battery rests upon a nonconsensual touching." Id. The Complaint does not allege that any of the Moving Defendants directly witnessed, let alone were actually involved in, the assault or battery allegedly committed by Defendant Jorgensen. Accordingly, Plaintiffs may not pursue a theory of direct liability for assault and battery against any of the Moving Defendants in Count One, as currently pled.

12. Count Two alleges that the Moving Defendants conspired with Defendant Jorgensen to falsely imprison K.G. (Compl. at ¶ 42.) In New Jersey, the tort of false imprisonment requires a

8

plaintiff to establish: "(1) an arrest or detention of the person against his or her will and (2) lack of proper legal authority or legal justification." Leang, 969 A.2d at 1117 (internal citation omitted). Moreover, to prove "conspiracy," a plaintiff must prove "an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am v. Gandi, 876 A.2d 253, 263 (N.J. 2005) (internal citation omitted). Assuming arguendo that the Complaint sets forth adequate facts to state a claim against Defendant Jorgensen for false imprisonment, the Complaint does not allege any facts to suggest that the Moving Defendants directly participated in the alleged detention of K.G., that the Moving Defendants agreed with Defendant Jorgensen to inflict a wrong or injury upon K.G., or that the Moving Defendants had any prior knowledge about Defendant Jorgensen's apparent plan to detain K.G. Accordingly, Plaintiffs may not pursue a theory of direct liability for conspiring to falsely imprison K.G. against any of the Moving Defendants in Count Two, as currently pled.

13. Count Three alleges that the Moving Defendants "engaged in actions intended to inflict severe emotional trauma upon plaintiff, K.G." (Compl. at ¶ 49.) To prevail on a claim for intentional infliction of emotional distress, a plaintiff "must establish intentional and outrageous conduct by the

9

defendant, proximate cause, and distress that is severe." Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988) (internal citation omitted). "For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress." Id. (internal citation omitted). The Complaint is void of any facts indicating that any of the Moving Defendants acted in an outrageous manner. Moreover, there are no facts alleged linking any intentional conduct by the Moving Defendants to any injury suffered by K.G. Accordingly, Plaintiffs may not pursue a theory of direct liability for intentional infliction of emotional distress against any of the Moving Defendants in Count Three, as currently pled, and the claims of direct liability against the Moving Defendants in Counts One, Two, and Three will be dismissed without prejudice.

14. ***Vicarious Liability***. Counts One, Two, and Three of the Complaint also allege that the Moving Defendants are vicariously liable for the conduct of Defendant Jorgensen. To succeed on a claim for vicarious liability, a plaintiff must prove: "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." Siemens Bldg. Techs., Inc. v. PNC Fin. Servs. Grp. Inc., 226 F. App'x 192, 195 (3d Cir. 2007) (quoting Carter, 815 A.2d at 463-64). Conduct is considered within the scope of

employment if the conduct: (1) is of "the kind he is employed to perform;" (2) occurs "substantially within the authorized time and space limits" of his employment; (3) was "actuated, at least in part, by a purpose to serve the master;" and (4) was not "unexpectable." Davis v. Devereux Found, 37 A.3d 469, 490 (N.J. 2012) (quoting Restatement (Second) of Agency § 228).

15. The Complaint does not state a claim for vicarious liability against the Moving Defendants on Counts One, Two, or Three for several reasons. **First**, Plaintiffs do not claim that the alleged actions of Defendant Jorgensen forming the basis of those Counts, namely the sexual assault of a teenager, were of the kind Defendant Jorgensen was hired to perform (i.e., playing a musical instrument at Owl City music concerts). **Second**, Plaintiffs claim that Defendant Jorgensen's alleged sexual acts took place on a municipal beach in the hours before and/or after an Owl City concert, and Plaintiffs do not allege that any of Defendant Jorgensen's relevant misconduct occurred during the concert itself, nor during the group's practice sessions or travel together for the concerts. **Third**, the Complaint does not allege that Defendant Jorgensen's sexual misconduct vis-à-vis K.G. was intended to benefit Owl City or any of the other Moving Defendants. **Finally**, the Complaint does not allege facts that indicate Defendant Jorgensen's conduct was foreseeable to any of the Moving Defendants, as discussed more below. Accordingly,

11

Defendant Jorgensen's alleged sexual misconduct did not fall within the scope of his employment with Owl City, as currently pled in the Complaint, and the claims of vicarious liability against the Moving Defendants in Counts One, Two, and Three will be dismissed without prejudice.

16. <u>Counts Four and Seven</u>. Counts Four and Seven are for <u>respondeat superior</u> and punitive damages, respectively, against all Defendants. (Compl. at ¶¶ 51-63, 83-84.) Counsel for Plaintiffs conceded at oral argument that neither "<u>respondeat superior</u>" nor "punitive damages" are legitimate, stand-alone causes of action. See <u>Rowan v. City of Bayonne</u>, 474 F. App'x 875, 870 n. 3 (3d Cir. 2012) ("[T]he doctrine of <u>respondeat superior</u> does not provide an independent cause of action under New Jersey law."); <u>Zodda v. Nat'l Union Fire Ins. Co. of Pittsburg, PA</u>, 2014 WL 1577694, at *5 (D.N.J. Apr. 21, 2014) ("It is well settled that the general rule is that there is not [a] cause of action for 'punitive damages.'"). Accordingly, as to the Moving Defendants, Counts Four and Seven will be dismissed with prejudice.[2] The Court will also, <u>sua sponte</u>,

---

[2] A court may deny leave to amend a complaint where it is apparent that: "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." <u>U.S. ex rel. Schumann v. Astrazeneca Pharma. L.P.</u>, 769 F.3d 837, 849 (3d Cir. 2014). In this case, because Counts Four and Seven are legally insufficient, and not merely factually insufficient, any amendment would be futile. The rights to seek liability

12

dismiss the claims in Counts Four and Seven against Defendant Jorgensen, since the same result is inevitable where New Jersey law does not recognize these stand-alone causes of action.

17. <u>Count Five</u>. In the Fifth Count, Plaintiffs allege "Negligent Hiring, Retention and Supervision" against the Moving Defendants. (Compl. at ¶¶ 64-75.) To succeed on a claim for negligent hiring, retention, or supervision, a plaintiff must prove: (1) the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee; (2) the employer could reasonably have foreseen that such qualities created a risk of harm to other persons; and (3) the employer's negligence in hiring, retaining, or supervising the employee permitted the employee's incompetence, unfitness, or dangerous characteristics to proximately cause injury to a third party. <u>DiCosala v. Kay</u>, 450 A.2d 508, 516 (N.J. 1982); <u>see</u> <u>also</u> <u>Hayward v. Salem City Bd. of Educ.</u>, 2016 WL 4744132, at *11 (D.N.J. Sept. 12, 2016); <u>Gargano v. Wyndam Skyline Tower Resorts</u>, 907 F. Supp. 2d 628, 633 (D.N.J. 2012).

18. The Complaint alleges no facts to support a claim that any of the Moving Defendants knew or should have known that Defendant Jorgensen was unfit or dangerous prior to the August 29, 2013 incident. There are, for example, no allegations that

---

under a <u>respondeat</u> <u>superior</u> theory and to seek punitive damages on any remaining or future counts are preserved.

13

Defendant Jorgensen had a history of criminal activity or inappropriate contacts with minors, or that Defendant Jorgensen was known within the music community for having a reputation for sexual aggression toward minors that the Moving Defendants knew about before the incident with K.G. occurred. There are simply no facts alleged in the Complaint which, if true, establish that the Moving Defendants knew or should have known that Defendant Jorgensen was unfit or dangerous, or that the Moving Defendants could have reasonably foreseen that Defendant Jorgensen would sexually assault a minor fan, such as K.G. Accordingly, Plaintiffs' claims of negligent hiring, retention, and supervision will be dismissed without prejudice.

19. Count Six. In Count Six, Plaintiffs bring claims against all Defendants for "Intentional Misconduct and/or Gross Negligence." (Compl. at ¶¶ 76-82.) As Plaintiffs' counsel clarified at oral argument, notwithstanding the label in the Complaint, Count Six is one for "gross negligence" only.

20. In a negligence action under New Jersey law, a plaintiff must establish: "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Development Corp., 119 A.3d 878, 885-86 (N.J. 2015).[3] With regard

---

[3] As relevant here, New Jersey Courts have held that some defendants owe a "heightened" duty to a minor where that

to claims of gross negligence, "the difference between 'gross' and 'ordinary' negligence is one of degree rather than of quality." Smith v. Kroesen, 9 F. Supp. 3d 439, 443 (D.N.J. 2014) (citing Fernicola v. Pheasant Run at Barnegat, 2010 WL 2794074, at *2 (N.J. Super. Ct. App. Div. July 2, 2010)). Gross negligence refers to behavior which constitutes "an indifference to consequences." Banks v. Korman Assocs., 527 A.2d 933, 934 (N.J. Super. Ct. App. Div. 1987).

    21. The Moving Defendants argue, inter alia, that Count Six should be dismissed because the allegations of the Complaint fail to establish that the Moving Defendants owed K.G. any duty of care, let alone that they breached this duty. This, the Moving Defendants argue, is because there existed no "special" or parens patrie relationship between the Moving Defendants and Plaintiff K.G., which would have imposed on any of them a duty to protect her. (Defs.' Br. [Docket Item 11-1] at 25-26; see also Defs.' Reply Br. [Docket Item 23] at 13; Defs.' Supp. Br. [Docket Item 28] at 1-10.) Plaintiffs, on the other hand, maintain that the Moving Defendants "owed a duty to the minor plaintiff and a class of underage female fans to vet their band

---

defendant is acting in the place of a minor's parents, as a temporary guardian, or caretake of the child. See, e.g., Frugis v. Bracigliano, 827 A.2d 1040, 1059 (N.J. 2003); J.H. v. Mercer Cty. Youth Det. Ctr., 930 A.2d 1223, 1231 (N.J. Super. Ct. App. Div. 2007).

members and excluding [sic] sexual predators of children from their employ." (Pls.' Opp. Br. [Docket Item 22-2] at 25.) In other words, Plaintiffs argue that in the entertainment setting, a music band, its members, and band management owe an enhanced or special duty to unaccompanied minor fans.

22. Plaintiffs concede that no New Jersey court has recognized such an enhanced or special duty in the entertainment context. (Pls.' Supp. Br. [Docket Item 27] at 1.) Rather, Plaintiffs ask this Court to "undertake a duty analysis" that evaluates "not what common law classification or amalgam of classifications most closely characterizes the relationship of the parties, but . . . whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition on the broker of a general duty to exercise reasonable care in preventing foreseeable harm to its open-house customers is fair and just." (Id. at 3) (quoting Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1115-16 (N.J. 1993)). In conducting any such analysis, New Jersey courts have made clear that "[f]oreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." J.S. v. R.T.H., 714 A.2d 924, 928 (N.J. 1998) (citing Williamson v. Waldman, 696 A.2d 14, 17 (N.J. 1997)).

23. It is conceivable, for example, that one could consider the analogous duty of care owed to a business invitee

16

to make the business premises reasonably safe for the patron. Hopkins, 625 A.2d at 1113 ("An owner or possessor of property owes a higher degree of care to the business invitee because that person has been invited on the premises for purposes of the owner that often are commercial or business related."); see also Restatement (Second) of Torts § 344. Thus, those who are responsible for a concert venue and the selling of tickets to the concert owe a constellation of duties to reasonably assure the safety of concert patrons. See Thompson v. Garden State Arts Ctr., Partners, 2007 WL 1598616, at *3 (N.J. Super. Ct. App. Div. June 5, 2007) (recognizing that owners of concert venues "have a duty to protect patrons from the 'foreseeable' criminal acts of third parties occurring on their premises, the scope of which may include providing security guards.").

24. Where the featured performers are known to attract minor patrons, such as star-struck girls who idolize the musicians and purchase tickets, the law may impose a heightened duty as to matters within management's control to protect the young patrons from unlawful sexual conduct of performers. One problem with extending that doctrine to the present case is that the sexual assaults forming the basis of Plaintiffs' allegations against Jorgensen and the Moving Defendants are not alleged to have occurred in the concert venue, nor within the area controlled by any of the Moving Defendants. While Defendant

17

Jorgensen is alleged to have used the concerts as a lure to attract K.G., his alleged sexual assaults of K.G. took place elsewhere – either in a hotel or on a municipal beach – that were not part of the concert venue. On the present factual allegations, the imposition of liability on the Moving Defendants for their roles as promoters, ticket sellers, or managers of the venue would fall short. The Court does not rule out the possibility that such a cause of action, against an appropriate defendant, could be stated in an amended complaint.

25. In sum, Plaintiffs have not alleged any facts that would suggest one or more of the Moving Defendants ever had knowledge of Defendant Jorgensen's inappropriate conduct with any minor fans, including K.G., either because of their own observations of such conduct or because of Defendant Jorgensen's reputation within the music community. Nor have Plaintiffs otherwise demonstrated Defendant Jorgensen's assault of K.G. was foreseeable to any of the Moving Defendants. Thus, the Complaint does not set forth a basis to find the Moving Defendants owed a duty to K.G., and Count Six will be dismissed without prejudice.[4]

---

[4] During oral argument, counsel for Plaintiff indicated for the first time that he had spoken with two other minors who may have been subjected to similar sexual abuse and inappropriate conduct by Defendant Jorgensen at Owl City concerts prior to the incident involving K.G.. Plaintiffs' counsel has since represented to the Court: "Recently, I communicated with both young women and they have advised me that we can provide their names as witnesses and that they will appear at trial." (Pls.'

26. <u>Count Eight</u>. Finally, Plaintiff B.G., the mother of K.G., brings a <u>per quod</u> claim seeking compensation for K.G.'s "care and treatment" and loss of B.G.'s "usual services, society, earnings and companionship." (Compl. at ¶¶ 85-89.) Under New Jersey law, a claim for parental loss of services of a minor child resulting from defendant's negligence is a viable <u>per quod</u> claim. <u>J.V. ex rel. Valdez v. Macy's Inc.</u>, 2014 WL 4896423, at *4 (D.N.J. 2014). As a derivative claim, however, the viability of a <u>per quod</u> claim depends on the existence of tortious conduct against the minor child. <u>See</u> <u>Tichenor v. Santillo</u>, 527 A.2d 78, 82 (N.J. Super. Ct. App. Div. 1987). Because, for the reasons discussed above, Plaintiffs' underlying common law tort claims fail as currently pled, Plaintiff B.G.'s <u>per quod</u> claim for damages must also fail. Count Eight will, therefore, be dismissed as to the Moving Defendants without prejudice.

27. **Conclusion**. For the foregoing reasons, the Court will grant the Moving Defendants' motion to dismiss with prejudice as to Counts Four and Seven and to dismiss claims against the Moving Defendants without prejudice as to Counts One, Two,

---

Supp. Br. at 5.) If, indeed, Plaintiffs' counsel has a reasonable and good faith basis to make these allegations, consistent with his obligations under Rule 11, Fed. R. Civ. P., such allegations may be set forth in a Proposed Amended Complaint as an attachment to a motion for leave to amend within fourteen (14) days of the entry of this Opinion and Order.

19

Three, Five, Six, and Eight. Plaintiffs may file a motion for leave to amend the Complaint to address the deficiencies noted herein within fourteen (14) days from the entry of this Opinion and Order upon the docket.[5] If discovery in the remaining case against Defendant Jorgensen leads to new information reflecting possible liability of any of the Moving Defendants, Plaintiffs may later file a motion to amend the pleadings at the earliest date. Finally, the present motion does not address Plaintiffs' claims against Defendant Jorgensen, which remain intact except for Counts Four and Seven, which are dismissed as to all Defendants, including Jorgensen, because no such causes of action (stand-alone claims for "respondeat superior" and for "punitive damages") exist under New Jersey law. Plaintiffs remain free to invoke the legal doctrines for respondeat superior and for an award of punitive damages in connection with any remaining counts as appropriate. The accompanying Order will be entered.

| | |
|---|---|
| **December 20, 2018** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |

---

[5] The Court also reminds Plaintiffs that the Proposed Amended Complaint, if any, must comply with Rule 8, Fed. R. Civ. P, which requires that the claimant "provide not only 'fair notice,' but also the 'grounds' on which the claim rests" with respect to each of the Moving Defendants. Phillips v. Cty. Of Allegheny, 515 F.3d 224, 221 (citing Twombly, 550 U.S. at 563 n.8).